Filed 10/15/20; Certified for Publication 11/9/20 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JUSTINE CRUZ, | D075479 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2017-00004606-CU-OE-CTL) |
| FUSION BUFFET, INC, et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of San Diego County, Kevin A. Enright, Judge. Affirmed.

Law Offices of Ray Hsu & Associates and Ray Hsu for Defendants and Appellants.

Abogato, Rodrigo E. Guevara and Rafael J. Hurtado for Plaintiff and Respondent.

I.

INTRODUCTION

Defendants Fusion Buffet, Inc. (Fusion Buffet), Xiao Yan Chen, and Zhao Jia Lin (jointly "the defendants") appeal from postjudgment orders of the trial court regarding

attorney fees and costs. The defendants contend that the court erred in: (1) granting plaintiff Justine Cruz's motion for attorney fees and costs against Fusion Buffet and in awarding her fees and costs in the amount of $47,132.50; (2) denying the defendants' motion to strike or to tax Cruz's costs; (3) denying the motion filed by Chen and Lin seeking attorney fees and costs against Cruz in the amount of $22,735; and (4) granting Cruz's motion to strike Chen and Lin's costs.

We conclude that the defendants have failed to demonstrate reversible error in the court's determinations with respect to these four postjudgment orders. We therefore affirm the challenged orders.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Cruz was employed as a server at the Great Plaza Buffet restaurant, which was operated by Fusion Buffet, from approximately February 2014 to late January 2016. Chen and Lin served as officers and owners of Fusion Buffet and managed the Great Plaza Buffet restaurant.

Cruz filed her original complaint against Fusion Buffet, Chen, and Lin in February 2017. In May, Cruz filed a First Amended Complaint, which became the operative complaint, alleging causes of action for: 1) failure to pay minimum wage; 2) failure to pay overtime compensation; 3) failure to pay meal period compensation; 4) failure to pay rest period compensation; 5) failure to furnish timely and accurate wage and hour statements; 6) waiting time penalties; 7) conversion of earned gratuities; 8) unlawful deductions from wages; 9) failure to indemnify for all necessary expenditures or losses;

2

and 10) unfair competition. In the First Amended Complaint, Cruz sought to impose liability against Chen and Lin under an alter ego theory, alleging, among other things, that Chen and Lin commingled their assets with those of Fusion Buffet and that they failed to maintain corporate formalities.

In the operative pleading, Cruz asserted a number of factual allegations regarding her employment at Great Plaza Buffet. She alleged that at the beginning of her employment, she was required to undergo a twelve-hour training period for which she received no pay. According to Cruz, she was paid close to minimum wage, and the restaurant had a tip pooling policy that required her to give up 50% of her tips, plus $3.00 or $5.00, per half or full day shift. The tips taken from Cruz and other servers were purportedly taken for the "back of the house" workers and hostesses.[1] Cruz worked anywhere from six to 12-hour days, and sometimes longer. She alleged that even when she worked overtime, she was paid at her regular rate only, and not time and a half. Cruz further alleged that she was forced to pay the bills of customers who failed to pay their own bills. In addition to these asserted wage issues, Cruz also alleged that she was regularly denied meal and rest breaks.

On April 3, 2018, more than a year after Cruz initiated her action and just under three weeks before the scheduled trial date, the defendants appeared before the court ex parte, seeking to reclassify the action as a limited jurisdiction matter. Cruz opposed the

[1]     In alleging claims against individual defendants Chen and Lin, Cruz alleged that the 50% of her tips, and the $3.00 to $5.00 per day that she was required to pay out of her tips, were not actually given to other workers, but instead, were kept by Chen and Lin for their personal benefit.

3

motion and provided an estimate of the damages that she was seeking, which totaled $41,258.41  After hearing argument from the parties, the trial court denied the defendants' motion for reclassification of the action.

After almost a year and a half of pretrial litigation, a three-day bench trial commenced on July 16, 2018.  At the conclusion of trial, the trial court found in Cruz's favor on seven out of the ten alleged causes of action, including her claims for nonpayment of wages, failure to pay overtime, and failure to pay meal and rest break compensation.  The trial court found in favor of Fusion Buffet on the remaining causes of action, including Cruz's claim for conversion, and in favor of Chen and Lin pursuant to Cruz's theory of alter ego liability on Cruz's other claims.

After the trial court issued its final Statement of Decision, the parties submitted competing motions for attorney fees and costs, as well as competing motions to strike or tax costs.  Chen and Lin sought an award of attorney fees and costs from Cruz in the amount of $22,735.00, as prevailing parties.  In support of Chen and Lin's motion for attorney fees and costs, defense counsel submitted a declaration with an invoice.

Cruz sought an award of $107,118.75 in attorney fees, which included a 1.25 multiplier, as well as costs in the amount of $4,583.35.  In support of Cruz's motion for attorney fees, Cruz's attorneys submitted declarations attesting to the number of hours of work they had completed in litigating the case, as well as declarations from six other employment law lawyers in the community attesting to the reasonable hourly fee for similar legal services.

4

After considering the arguments of counsel and the evidence presented, the trial court applied the statutory framework for the provision of attorney fees and costs provided by Labor Code[2] sections 218.5 and 1194.[3] In applying this framework, the court specifically found that Cruz's meal and rest break claims were inextricably intertwined with her other wage and hour claims, such that it was not possible to separately apportion the time her attorneys had spent on successful and unsuccessful claims. Based on the court's determination that Cruz's successful claims were

---

[2]    Further statutory references are to the Labor Code unless otherwise indicated.

[3]    Section 218.5 provides:

"(a) In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith. This section shall not apply to an action brought by the Labor Commissioner. This section shall not apply to a surety issuing a bond pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code or to an action to enforce a mechanics lien brought under Chapter 4 (commencing with Section 8400) of Title 2 of Part 6 of Division 4 of the Civil Code.

"(b) This section does not apply to any cause of action for which attorney's fees are recoverable under Section 1194."

Section 1194 provides in relevant part:

"(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

5

inextricably intertwined with her other claims, the trial court concluded that Cruz was the prevailing party, and, pursuant to sections 218.5 and 1194, that she was entitled to "recover fees and costs incurred based on time spent litigating against all defendants because she was the prevailing party." In exercising its discretion to award attorney fees, the trial court determined that Cruz's counsel's requested hourly rates, as well as the number of hours asserted, were not reasonable; the court therefore awarded Cruz a reduced attorney fee award of $47,132.50.

The trial court denied the defendants' motion to tax or strike costs, finding that the $4,583.35 in costs that Cruz was requesting was justified.

The trial court also jointly addressed the defendants' motion for attorney fees and costs and Cruz's motion to strike or tax the defendants' costs. In addressing these competing motions, the trial court specifically determined that the provisions of Code of Civil Procedure section 1032 were inapplicable, given the existence of specific Labor Code statutes governing an award of attorney fees and costs in a wage and hour action, and that Code of Civil Procedure section 998 was also inapplicable because that provision acts to "augment[ ] or withhold[ ]" costs only under Code of Civil Procedure section 1032. As a result, the court granted Cruz's motion to strike the defendants' motion for attorney fees and costs, while correspondingly denying the individual defendants' motion for their claimed attorney fees and costs.

6

In sum, the trial court awarded Cruz $47,132.50 in attorney fees and $4,583.35 in costs, and denied the defendants any attorney fees or costs.

The defendants filed a timely notice of appeal from the trial court's orders.

III.

DISCUSSION

A. *Code of Civil Procedure section 1033, subdivision (a) did not require the court to reduce or limit Cruz's award of attorney fees and costs*

The defendants assert that "[p]ursuant to [Code of Civil Procedure section] 1033 [subdivision] (a), attorney[ ] fees and costs should be denied to [a] Plaintiff for failing to obtain a judgment beyond the jurisdictional limit for limited civil cases and for opposing Defendant's Motion to Reclassify without merit." Code of Civil procedure section 1033, subdivision (a) grants a trial court discretion to deny, in whole or in part, a plaintiff's recovery of litigation costs, including attorney fees, where the plaintiff brought the action as an unlimited civil case but obtains a judgment for money damages in an amount that could have been recovered in a limited civil case.[4]

---

[4] Code of Civil Procedure section 1033, subdivision (a) provides in relevant part: "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case." At the time that Cruz filed her action in 2017, a "limited civil case" was (and currently remains) a matter for which "[t]he amount in controversy does not exceed twenty-five thousand dollars ($25,000)." (Code Civ. Proc., § 85.)

In response to the defendants' argument regarding Code of Civil Procedure section 1033, subdivision (a), Cruz argues that Code of Civil Procedure section 1033 is a default statute that applies only in cases in which there is not a more specific statute or statutory framework that governs the apportionment of fees and costs between the parties, and that there are specific Labor Code statues that govern the awarding of attorney fees and costs in this action. Cruz also argues that even if Code of Civil Procedure section 1033, subdivision (a) does apply to this matter, that provision simply grants the trial court the discretion to deny attorney fees and costs as it sees fit, but does not require that a court deny attorney fees and costs. We agree with Cruz that even if Code of Civil Procedure section 1033, subdivision (a) may properly be applied in a case in which there are more specific Labor Code statutes that govern the awarding of fees and costs, the defendants in this case have not demonstrated that Code of Civil Procedure section 1033, subdivision (a)'s provisions *require* that "attorney[ ] fees and costs . . . be denied to [a p]laintiff for failing to obtain a judgment beyond the jurisdictional limit for limited civil cases," nor have they demonstrated that the court abused its discretion in concluding that an award of fees and costs to Cruz was appropriate despite the fact that her ultimate recovery in this action was an amount that could have been obtained in a limited jurisdiction case.[5]

_____

[5]    We need not decide as a matter of law whether Code of Civil Procedure section 1033, subdivision (a) applies in a case in which the fee-shifting provisions of Labor Code section 1194 or section 218.5 apply, given our conclusion that, even assuming that it does apply, the defendants have demonstrated no abuse of the court's discretion in its award of attorney fees and costs in this case.

8

First, as Cruz points out, Code of Civil Procedure section 1033, subdivision (a) does not *require* that a court decline to award fees and costs to a plaintiff who files an action as an unlimited civil case but ultimately recovers an amount that could have been recovered in a limited jurisdiction case, but merely gives the court the discretion to do so. As the Supreme Court has explained, Code of Civil Procedure section 1033, subdivision (a) "gives the trial court *discretion* to deny, in whole or in part, the plaintiff's recovery of litigation costs" including attorney fees, in a situation in which "a plaintiff has obtained a judgment for money damages in an amount (now $25,000 or less) that could have been recovered in a limited civil case, but the plaintiff did not bring the action as a limited civil case and thus did not take advantage of the cost- and time-saving advantages of limited civil case procedures." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 982–983, 986 (*Chavez*), italics added.)  To the extent that the defendants contend that Cruz is "not entitled to" any attorney fees and costs "because [she] should have filed her case in limited jurisdiction" (boldface & capitalization omitted), they are wrong; Code of Civil Procedure section 1033, subdivision (a) merely allows the court to deny such fees and costs where a court deems such denial appropriate.

Further, to the extent that the defendants contend that the trial court abused its discretion in not denying Cruz some or all of her attorney fees and costs under the authority of Code of Civil Procedure section 1033, subdivision (a), we conclude that they have failed to demonstrate an abuse of discretion in this regard.  "Exercises of discretion must be ' "grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." ' [Citation.] . . . The standard 'asks in

9

substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts.' [Citation.]" (*People v. Diaz* (2014) 227 Cal.App.4th 362, 377.) " ' "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice[,] a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815 (*Dorman*).)

The "factors that a trial court should ordinarily consider in exercising its discretion under [Code of Civil Procedure] section 1033[, subdivision] (a)" include "the amount of damages the plaintiff reasonably and in good faith could have expected to recover and the total amount of costs that the plaintiff incurred." (*Chavez*, *supra*, 47 Cal.4th at p. 984, citing *Dorman*, *supra*, 35 Cal.App.4th at pp. 1816–1817; *Valentino v. Elliott Sav–On Gas, Inc.* (1988) 201 Cal.App.3d 692, 702; and *Greenberg v. Pacific Tel. & Tel. Co.* (1979) 97 Cal.App.3d 102, 108.) However, as *Chavez* further counsels, where another statutory provision of law would otherwise provide for the award of attorney fees to a prevailing plaintiff and the court is also exercising its discretion under Code of Civil Procedure section 1033, subdivision (a) to grant or deny litigation costs, including attorney fees, that court "must give due consideration to the policies and objectives of the [specific attorney fees and cost shifting statute at issue] and determine whether denying attorney fees [pursuant to the discretion granted in Code of Civil Procedure section 1033,

10

subdivision (a)], in whole or in part, is consistent with those policies and objectives."
(*Chavez*, *supra*, at p. 986.)[6]

We see no abuse of the court's discretion in the court's declining to deny Cruz attorney fees under Code of Civil Procedure section 1033, subdivision (a). "[T]he purpose of Code of Civil Procedure section 1033 . . . is 'to discourage plaintiffs from "over filing" their cases' and thereby 'wast[ing] judicial resources.' " (*Carter v. Cohen* (2010) 188 Cal.App.4th 1038, 1054.) Therefore, one of the "factors that a trial court should ordinarily consider in exercising its discretion under [Code of Civil Procedure] section 1033[, subdivision] (a)" is "the amount of damages the plaintiff reasonably and in good faith could have expected to recover" (*Chavez*, *supra*, 47 Cal.4th at p. 984). In this case, because the defendants filed a motion to reclassify the action as a limited

---

[6]     *Chavez*, *supra*, 47 Cal.4th at page 975, involved the intersection between Code of Civil Procedure section 1033, subdivision (a) and a provision in the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) that grants a trial court the discretion to award attorney fees to a prevailing party. The *Chavez* court was asked to determine whether Code of Civil Procedure section 1033, subdivision (a) "does not apply to an action brought under the FEHA." (*Chavez*, *supra*, at p. 986.) The *Chavez* court concluded: "Giving effect to the plain meaning of the statutory language at issue, and construing the relevant statutory provisions in a way that allows both to be given effect, we hold, therefore, that [Code of Civil Procedure] section 1033[, subdivision] (a), which grants the trial court discretion to deny costs to a plaintiff who recovers damages that could have been recovered in a limited civil case, applies to actions asserting FEHA claims." (*Id.* at p. 989.) Again, we need not decide whether Code of Civil Procedure section 1033, subdivision (a) does or does not apply to actions asserting claims under the Labor Code for which sections 218.5 and 1194 govern the question of attorney fees, because even if we presume that it does apply, the defendants in this action have not demonstrated that the court's decision to award Cruz attorney fees and costs despite Cruz's failure to obtain a judgment that exceeded the jurisdictional limit for limited jurisdiction cases was an abuse of the court's discretion under Code of Civil Procedure section 1033, subdivision (a).

11

jurisdiction matter, and the court denied that motion, there is a prior ruling that implicitly concludes that Cruz did not act unreasonably in seeking damages beyond the limited jurisdiction amount. In addition, Cruz presented evidence to demonstrate the basis for the damages that she was requesting. In response to the defendants' motion to reclassify the action as a limited jurisdiction matter, Cruz provided a "draft breakdown of [the] damages sought" (capitalization & boldface omitted) in her action, which included approximately $3,525.44 in overtime pay, $4,962.67 in meal period premium pay, $4,962.67 in rest period premium pay, $2,508 in waiting time penalties, $25,049.03 in earned gratuities that Cruz alleged had been converted by the defendants, plus some other minor amounts for failures to reimburse and minimum wages due, for an estimated total in damages of $41,258.41. As is clear from the trial court's ruling on the defendants' motion to reclassify, in the trial court's view, Cruz reasonably could have expected to recover more than the jurisdictional limit for limited jurisdiction cases when she filed and litigated this case to trial, meaning that Cruz did not " ' "over fil[e]" ' " (*Carter*, *supra*, at p. 1053) her case. The defendants did not challenge the trial court's decision with respect to their motion to reclassify the matter, and, as a result, they essentially conceded the correctness of trial court's ruling denying the reclassification motion. The fact that Cruz ultimately recovered less than the jurisdictional limit for limited jurisdiction cases does not mean that the amount of damages that she originally sought was unreasonable or was not pursued in good faith. The record does not provide us with any reason to second-guess the trial court's conclusions in this regard.

12

The defendants have demonstrated no abuse of discretion in the court's decision to award Cruz some portion of her attorney fees even though she ultimately recovered less than the $25,000 limited jurisdiction amount.

B. *The trial court did not abuse its discretion in declining to apportion attorney fees between the claims for which attorney fees are available and those for which they are not*

The defendants alternatively contend that "the trial court abused its discretion" in failing to "apportion attorney's fees, at the very least, for the time Plaintiff spent at trial litigating claims for which attorney's fees are not available." According to the defendants, contrary to the court's ruling that Cruz's claims were "inextricably intertwined," "it is not impossible to sever and apportion the time Plaintiff spent litigating meal and rest break violations and the tips/conversion causes of actions."

Where a plaintiff has alleged multiple causes of action and is statutorily entitled to fees with respect to only one or fewer than all of the claims, the trial court can apportion the attorney fees. (*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 628.) However, it is clear that attorney fees need not be apportioned between claims for which statutory fees are available and those for which they are not where the claims involve either common factual issues or legal issues. (See *Akins v. Enterprise Rent-a-Car Co.* (2000) 79 Cal.App.4th 1127, 1133; see also *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 ["Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed"].) "Where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's

discretion." (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555.)  Further, as the one who has "heard the entire case," it is the trial court who is "in the best position to determine whether any further allocation of attorney fees [i]s required or whether the issues were so intertwined that allocation would be impossible." (*Id.* at p. 556.)

The trial court declined to apportion fees, and specifically addressed the defendants' argument, stating, "[A]lthough no statutory basis for attorneys' fees exists for meal and rest break claims, Plaintiff's litigation on her meal and rest break claims are inextricably intertwined with her other wage and hour claims for which fees are recoverable."  We see no error in the court's determination.  Cruz's claims, including her meal and rest break claims, shared some common factual and legal issues.  For example, an employee is generally entitled to a 30-minute meal period for every five hours worked, as well as a 10-minute rest period for every four hours worked (see Industrial Welfare Commission ("IWC") wage order No. 5-2001, §§ 11(A) & 12(A); see also Lab. Code, § 226.7)  Further, an employee is entitled to minimum wage for every hour worked, as well as overtime pay for every hour worked in excess of eight hours (see IWC wage order No. 5-2001, § 3(A); see also Lab. Code, §§ 1194, 1194.2 & 1197).  As a result, meal and rest break claims and wage claims all necessarily required an analysis and consideration of the number of hours that Cruz worked.  It is also apparent from Cruz's use of evidence that her meal and rest break claims were intertwined with her wage claims; Cruz presented evidence such as photographs of timecards, paycheck stubs, a list of gratuities

14

paid and the dates on which they were paid, as well as testimony regarding the hours worked or amounts paid, to establish all of her claims.

The defendants argue that *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265 (*Heppler*) demonstrates that apportionment was required here. We disagree. In *Heppler*, the appellate court concluded that the trial court had abused its discretion in failing to apportion fees where it was clear that claims for which attorney fees were recoverable and those for which fees were not recoverable were not intertwined. In that case, the plaintiffs sued a contractor, who then cross-complained against four subcontractors, for alleged construction defects. (*Id.* at p. 1273.) The trial court awarded the plaintiffs all of their requested attorney fees against one subcontractor, Martin, pursuant to a provision in a contract. (*Id.* at pp. 1274–1275.) On appeal, the appellate court noted that "Martin's part of the case could have been tried in considerably less time than seven weeks had the trial not taken up issues that involved the other nonsettling subcontractors. It strikes us as eminently unfair to tag Martin with all of plaintiffs' attorney fees for the entire seven-week trial. [¶] . . . [¶] Not all the issues involving Martin's case were integrally associated with the other issues in the case; at the very least, some of them could have been severed and isolated for purposes of the attorney fees award." (*Id.* at p. 1297.) The *Heppler* court explained that, for example, multiple days of trial were "devoted exclusively to soil issues," yet Martin was a roofing subcontractor whose work had nothing to do with soil issues. (*Id.* at pp. 1272, 1297.)

What is clear from *Heppler* is that there existed well-defined lines of demarcation between the causes of action involving Martin and those that did not, such that the causes

15

of action litigated in the trial in that case were *not* all inextricably intertwined. Here, as we have already explained, no such distinct boundaries exist. We see no abuse of discretion in the trial court's determination that no apportionment was required because Cruz's "meal and rest break claims [for which fees would not be recoverable] are inextricably intertwined with her other wage and hour claims for which fees are recoverable."

C. *The trial court's attorney fee award is supported by substantial evidence and is not "grossly inflated and unreasonable"*

The defendants contend that there is insufficient evidence to support the trial court's award of $47,132.50 in attorney fees, and argue that the award is "grossly inflated and unreasonable." (Boldface & capitalization omitted.) The trial court awarded Cruz this amount in fees pursuant to sections 218.5 and 1194. Again, section 218.5 provides that an employee is entitled to "reasonable attorney's fees" with respect to successful wage or overtime claims,[7] while section 1194 "allows a prevailing employee to recover attorney's fees in a 'civil action' for unpaid overtime compensation." (*Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th 1363, 1378.)

As noted, we review the amount of an attorney fees award for an abuse of discretion. (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1096 (*PLCM*).) Unless an award is "clearly wrong," no such abuse of discretion can be demonstrated. (*Ibid.*) In

---

[7]     Section 218.5 not only allows for a prevailing party employee to obtain attorney fees, but it limits the situations in which a prevailing party employer can recover attorney fees to those in which a trial court finds that the employee brought his or her wage claim in bad faith.

16

other words, a trial court's attorney fee award will not be set aside "absent a showing that it is manifestly excessive in the circumstances." (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 782.)

The amount of attorney fees awarded is often computed in accordance with the familiar "lodestar" method. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135–1136.) Under this method, "[t]he court tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321.) In order for the trial court to determine a reasonable rate and a reasonable number of hours spent on a case, a party must present some evidence to support its award request. (See *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559.) The declaration of an attorney as to the number of hours worked on a particular case may be sufficient evidence to support an award of attorney fees, even in the absence of detailed time records. (See *ibid.*) Indeed, sufficient evidence to support an attorney fee award may include "[d]eclarations of counsel setting forth the reasonable hourly rate, the number of hours worked and the tasks performed." (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1324.) There is no requirement that an attorney provide time records or billing statements. (*Ibid.*; see also *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784–785.)

Cruz's attorneys submitted declarations attesting to the number of hours they spent working on the case, which was identified as 85.3 hours for attorney Rodrigo Guevara and 114.7 for attorney Rafael Hurtado. The declarations also identified the attorneys'

17

hourly rates, as $500 per hour and $350 per hour, respectively. Further, the declaration of Rafael Hurtado includes a description of the types of activities on which Cruz's attorneys spent their time, which included "drafting the complaint, analyzing damages, propounding and reviewing discovery requests, preparing and taking depositions, defending Plaintiff's deposition, meeting and conferring with Defense counsel, preparing for and appearing at the hearings in this matter, preparing for trial, conducting trial, and post-trial work." In addition, the declaration includes a lengthy narrative describing various dates and specific details about the nature of the communications between plaintiff's counsel and counsel for the defendants, as well as the various discovery, filings, and other litigation proceedings involved in this matter.

Cruz's attorneys also submitted six declarations from other attorneys in the area attesting to the reasonableness of Cruz's attorneys' hourly rate requests. These declarations were relevant to the court's analysis, since a trial court should consider the rates charged by attorneys of comparable skill and experience for purposes of determining a proper hourly rate on a contingency fee case. (See *Blanchard v. Bergeron* (1989) 489 U.S. 87.) A trial court may also consider the hourly rate charged by other attorneys in the community for similar work. (*Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 997, overruled on other grounds by *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664.)

Although attorney Guevara's declaration is not nearly as detailed with respect to the types of tasks that he performed, Hurtado's declaration attested to the types of tasks that both attorneys undertook in litigating the case. Further, the judge who oversaw all of

18

the proceedings was clearly familiar with the quality of the services performed and the amount of time the attorneys devoted to the case. (See *PLCM*, *supra*, 22 Cal.4th p. 1096 [" 'The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case' "]; see also *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [An " 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while [the judge's] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong' "].)

The trial court reviewed the declarations submitted by Cruz's counsel, and after considering the unique factors of the case and applying the court's own expertise in determining the value of plaintiff's counsel's services, decided that the number of hours for which Cruz's attorneys sought compensation was excessive, and concluded that an award of $47,132.50 in attorney fees—an amount less than half of the $107,118.75 that Cruz's attorneys sought, was reasonable. We have no basis on which to conclude that the trial court's attorney fee award was "clearly wrong" or that the court otherwise abused its discretion in determining the attorney fee award.

D.  *The trial court did not abuse its discretion in granting Cruz's motion to strike Chen and Lin's costs*

In a short argument in their opening brief that is not further addressed on reply, Chen and Lin contend that Cruz should be precluded from obtaining attorney fees and costs from them for the period after they each made a Code of Civil Procedure section 998 offer, and that they, in fact, "are entitled, at a minimum, to costs." Chen and Lin assert that because they each served Cruz with a Code of Civil Procedure section 998 offer of $1 at the close of discovery and after all depositions had been taken, and because Cruz failed to obtain a recovery of more than $1 from either Chen or Lin, they are entitled to an award of costs.[8]

"In the absence of a specific Labor Code provision, costs are awarded in employment dispute matters under Code of Civil Procedure section 1032." (*Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1253 (*Ling*).) That statute awards costs as a matter of right to a prevailing party "in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).)

---

[8]    On March 29, 2018, and April 15, 2018, more than a year after Cruz filed her initial complaint and had litigated the case and expended attorney fees, the defendants sent two sets of offers purporting to be Code of Civil Procedure section 998 offers. Included in the defendants' offers were offers made by Chen and Lin for $1 each. According to a declaration submitted by one of Cruz's attorneys, the terms of the offers were ambiguous with respect to certain matters and lacked detailed terms and conditions of settlement. For example, the offers left open whether Cruz would be giving up her right to seek attorney fees, lacked a statement indicating that the offer was being accepted, and lacked information as to the manner in which acceptance could be made. Cruz's attorneys attempted to discuss their questions about the offers with counsel for the defendants on several occasions, both in person and through e-mail. According to that declaration and another declaration from the same attorney, Cruz's attorneys' requests for clarification went unanswered, and the parties failed to reach a settlement.

20

Code of Civil Procedure section 998 provides that "[t]he costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section." (*Id.*, subd. (a).) Under Code of Civil Procedure section 998, subdivision (c)(1), "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer."

Chen and Lin contend that because they offered Cruz $1 each to settle her claims against them, and because she ultimately recovered nothing from them, under Code of Civil Procedure section 998, Cruz should have to pay their costs for, at a minimum, the period of time after they made the offers. However, two Labor Code sections, both at play here, provide for specific fee and cost shifting in wage-related actions. Section 1194, subdivision (a) provides that an "employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, *reasonable attorney's fees*, *and costs of suit*." (Italics added.) "Because section 1194 provides only for a successful *plaintiff* to recover attorney fees and costs, it is a one-way fee-shifting statute [that] preclud[es] an employer from collecting fees and costs even if the employer prevails on a minimum wage or overtime claim." (*Ling*, *supra*, 245 Cal.App.4th at p. 1253, citing *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1425 (*Earley*).) Section 218.5 is a unique two-way fee shifting statute, providing for an award of attorney fees and costs to the prevailing party "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and

21

welfare or pension fund contributions"; however, where the prevailing party is *someone other than an employee*, that party is entitled to recover fees and costs *only* if the covered action was brought in *bad faith* by the employee. (§ 218.5, subd. (a) ["if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith"].)[9]

Because Cruz prevailed on her overtime and other wage claims against Fusion Buffett, the trial court concluded that sections 1194 and 218.5 applied to entitle Cruz to attorney fees and costs in the action. The trial court also concluded that these same provisions precluded the individual defendants from being awarded fees or costs, despite the fact that Cruz did not specifically prevail against them under her alter ego theory of liability.

As its terms specify, Code of Civil Procedure section 998 alters the cost-shifting provisions of Code of Civil Procedure sections 1031 and 1032, only;[10] it does not alter the cost-shifting provisions of other statutes. Further, pursuant to the authority of *Ling*, *supra*, 245 Cal.App.4th at page 1253, Code of Civil Procedure section 1032 does not

---

[9]    In 2013, the Legislature amended section 218.5, limiting what had previously been a fully reciprocal fee and cost shifting provision. The limitation that if the prevailing party is someone other than the employee, that party shall recover fees and costs *only if* the covered action was brought in bad faith by the employee became effective January 1, 2014. The amendment also precludes the statute's application to "any cause of action" (formerly, "any action") governed by section 1194. (Stats. 2013, ch. 142, § 1.)

[10]    Again, Code of Civil Procedure section 998 provides in relevant part: "The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section."

apply where the fee and cost provisions of sections 1194 or 218.5 apply. Therefore, Chen and Lin's argument regarding the applicability of Code of Civil Procedure section 998 is unavailing.

We acknowledge that the authority on which Chen and Lin rely, *Plancich v. United Parcel Service, Inc*. (2011) 198 Cal.App.4th 308, 310–312, suggests that Code of Civil Procedure section 1032 could be applied to require an unsuccessful employee plaintiff to pay the costs of a party, sued as an employer, who prevails on overtime wage claims. The *Plancich* court concluded that because section 1194 refers only to prevailing *plaintiffs* being entitled to attorney fees and costs, and is silent regarding prevailing defendant employers (or parties sued as employers) with respect to overtime and wage claims, Code of Civil Procedure section 1032 applies to fill in the "gap" created by section 1194's silence as to prevailing defendants. (*Plancich*, *supra*, at p. 313 ["based on the plain meaning of the words of the statutes in question, section 1194 does not provide an 'express' exception to the general rule permitting an employer, as a prevailing party, to recover costs under Code of Civil Procedure section 1032, subdivision (b), because . . . section 1194 makes no mention of prevailing employers"].) In determining that this is the proper interpretation of section 1194, the *Plancich* court essentially rejected the reasoning of *Earley*, *supra*, 79 Cal.App.4th at p. 1431, concluding that *Earley* was not "persuasive authority" because the *Earley* case discussed only attorney fees, and not costs, with respect to section 1194. (*Plancich*, at pp. 315–316.) However, the *Earley* court clearly held that neither attorney fees nor costs are available to a prevailing defendant when section 1194 is involved: "[I]f an employee is unsuccessful in a suit for

23

minimum wages or overtime, section 1194 does not permit a prevailing employer to recover *fees or costs*." (*Earley*, *supra*, at p. 1429, italics added.)

We disagree with the *Plancich* court's analysis, and instead agree with the *Earley* and *Ling* courts' conclusions that section 1194 is intended to operate as a *one-way fee and cost* shifting statute that governs with respect to minimum wage and overtime causes of action.  A one-way fee and cost shifting provision serves the public policy of section 1194.  Indeed, in 1991, an amendment to section 1194 "added the rights to recover prejudgment interest and reasonable attorney fees" to the employee's "right to recover costs of suit." (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 829, citing Stats. 1991, ch. 825, § 2.)  "[T]he legislative history of the 1991 amendment of Labor Code section 1194 reveals that it was intended to provide a ' "needed disincentive to violation of minimum wage laws." (Sen. Rules Com., Analysis of Sen. Bill No. 955 (1991–1992 Reg. Sess.) as amended Sept. 10, 1991.[ ])  An analysis of the bill submitted to the Senate in advance of the vote state[s] that "[t]hese additional remedies are especially necessary in situations where the employees themselves pursue a private action to recover unpaid wages or overtime." (*Ibid.*)'  (Italics omitted.)" (*Bell*, *supra*, at p. 829.)  This public policy is not served by allowing for a more general cost-shifting provision, such as that expressed in Code of Civil Procedure section 1032, to apply to require the shifting of costs in favor of a prevailing defendant employer; section 1194 speaks only to entitling a prevailing plaintiff employee to costs and fees.  We decline to interpret section 1194's silence with respect to prevailing employers as anything other than a Legislative intention to provide a one-way cost and fee shifting provision.  We

24

conclude, in line with the *Earley* and *Ling* courts, that where section 1194 applies, it displaces any application of Code of Civil Procedure section 1032, subdivision (b), thereby rendering Code of Civil Procedure section 998 also inapplicable.[11]  We therefore reject Chen and Lin's reliance on Code of Civil Procedure section 998 to suggest that they are entitled to their costs.

E.  *The trial court's finding of no bad faith is supported by the record*

In their final argument, Chen and Lin contend, in the alternative, that they should have been awarded attorney fees and costs pursuant to section 218.5 because Cruz's causes of action against them, individually, "were completely devoid of merit."  Section 218.5 provides in relevant part: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.  However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be

---

[11]  The fact that section 218.5 was amended after *Plancich* to alter what had been a fully reciprocal fee and cost shifting provision into one weighted significantly in favor of plaintiffs also supports the idea that the Legislature is, and continues to be, concerned with the public policy of the Labor Code statutory framework as one "meant to 'encourage injured parties to seek redress – and thus simultaneously enforce [the public policy of the minimum wage and overtime laws] – in situations where they otherwise would not find it economical to sue.' " (*Earley*, *supra*, 79 Cal.App.4th at p. 1430–1431, quoting *Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 325.)  Reading the silence of section 1194 with respect to prevailing defendant employers in a way that would allow for the cost-shifting provisions of Code of Civil Procedure sections 1032 and 998 to apply, such that a prevailing defendant employer could obtain costs from an unsuccessful minimum wage and overtime claimant under those provisions, would undermine this public policy.

25

awarded pursuant to this section *only if the court finds that the employee brought the action in bad faith.*"

Again, we review a trial court's fee decision for an abuse of discretion. (*Chavez*, *supra*, 47 Cal.4th at p. 989.) However, to the extent that a trial court's ruling is based on factual determinations, we review the record for substantial evidence. (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430.)

Chen and Lin argue that although "California courts have yet to provide a definitive analysis of what constitutes bad faith under section 2[ ]18.5," case law indicates that "an action or tactic is frivolous and in bad faith where any reasonable attorney would agree such action or tactic is totally devoid of merit." Chen and Lin suggest on appeal that Cruz's claims against them were brought in bad faith because Cruz could not have possibly met the test for holding Chen and Lin liable under an alter ego theory.

According to Chen and Lin, pursuant to *Leek v. Cooper* (2011) 194 Cal.App.4th 399, in order to establish liability under an alter ego theory, a plaintiff must be able to show "(1) such a unity of interest and ownership between the corporation and its equitable owner that no separation actually exists, and (2) an inequitable result if the acts in question are treated as those of the corporation alone." (*Id.* at p. 417.) They argue that Cruz could never have demonstrated that an "inequitable result" would have occurred if the corporation, alone, were held liable because Cruz "never offered any proof that she could not recover from the corporate Defendant alone."

"The alter ego doctrine is an equitable principle that elevates substance over form in order to prevent an inequitable result arising from unjustifiably observing a corporation's separate existence.  [Citation.]  The doctrine is applied, and a party other than the corporation is liable for the corporation's acts, when recognition of the corporate structure would 'sanction a fraud or promote injustice.'  [Citations.]  The alter ego doctrine is, under normal circumstances, part of a claim to satisfy a corporate obligation that the claimant must plead and prove when the claim is against a party other than the corporation.  [Citation.]"  (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 824–825.)

Applying the standard articulated by Chen and Lin, which requires an objective standard as to the complete absence of merit in a particular cause of action (see *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 [In FEHA context, a prevailing defendant may be awarded fees only if "the court finds the action was

objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so"]), substantial evidence in the record supports the trial court's factual determination that even though Cruz's claims against Chen and Lin were ultimately found not to be meritorious, the claims against them were not so objectively without foundation that one must conclude that the action against them was brought in bad faith.

Cruz presented evidence in an attempt to demonstrate that Fusion Buffet was a shell for Chen and Lin, and that Chen and Lin comingled their funds with those of Fusion Buffet and failed to maintain corporate formalities. Indeed, Cruz had difficulty obtaining the defendants' financial documents through the discovery process, and obtained those documents only a couple of weeks before trial, after serving subpoenas on the defendants' accountant and bank. Not having this information left Cruz in a potentially vulnerable position with respect to being able to determine whether recovery from Fusion Buffet would be possible. At trial, Cruz offered evidence, including the Articles of Incorporation, Statements of Information, corporate meeting minutes, a lease agreement, bank account statements, and witness testimony, in support of her contention that there was a lack of corporate formalities and commingled funds between Chen and Lin and Fusion Buffet such that if full recovery from Fusion Buffet were not possible, Chen and Lin might also be liable for the damages Cruz suffered. The fact that the trial court did not ultimately agree with Cruz's arguments regarding Chen and Lin's liability under alter ego principles does not mean that her action against them was unreasonable or frivolous.

28

(See *Christiansburg Garment Co. v. Equal Employment Opportunity Commission* (1978) 434 U.S. 412, 421–422.) "In applying [the criteria that an action has been frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith], it is important that a . . . court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." (*Ibid.*)

Chen and Lin simply have not demonstrated on appeal that there is insufficient evidence to support the trial court's finding that Cruz's claims against them were not brought in bad faith. We therefore reject their contention that the trial court erred in concluding that Cruz's claims against Chen and Lin were not brought in bad faith and that Chen and Lin therefore were not entitled to an award of attorney fees pursuant to the fee shifting provision in section 218.5 with respect to claims for nonpayment of wages.

29

IV.

DISPOSITION

The postjudgment orders of the trial court are affirmed.  Cruz is entitled to her costs on appeal.


AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

Filed 11/9/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

JUSTINE CRUZ,

    Plaintiff and Respondent,

    v.

FUSION BUFFET, INC., et al.,

    Defendants and Appellants.

D075479

(Super. Ct. No. 37-2017-00004606-CU-OE-CTL)

ORDER CERTIFYING
OPINION FOR PUBLICATION

THE COURT:

    The opinion in this case filed October 15, 2020 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to rule 8.1120(a) for publication are GRANTED.

    IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

    ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to: All parties